423 P.2d 659

**Richard Nolan JARDINE, Plaintiff and Respondent,**

v.

**BRUNSWICK CORPORATION, Defendant and Appellant.**

No. 10631.

Supreme Court of Utah.

Feb. 7, 1967.

Brayton, Lowe & Hurley, John W. Lowe, Salt Lake City, for appellant.

Richard L. Bird, Jr., Salt Lake City, for respondent.

CROCKETT, Chief Justice:

Richard Nolan Jardine sued and recovered a judgment of $28,714.34 against Brunswick Corporation on the ground that the latter had by negligent misrepresentation deceived him into making an ill advised loan to a third party, Jack Charlesworth, and lose the money. Defendant appeals contending that the evidence does not establish any basis for such a recovery.

Plaintiff had been a successful business man in the state of Washington. He had operated variously a cafe, barber shop, grocery store, saw mills, and engaged in farming; and had at times hired up to 30 employees. His wife having passed away, he "sold out and retired" in 1959, and moved to Salt Lake City to be near his children. He talked to Ida Young, a real estate broker, about his desire to have something to do, which led to his becoming interested in the bowling business. In November, 1961, she contacted Brunswick and arranged for Jardine to meet with them. A plan was devised: Brunswick would help Jardine find someone to finance and build a bowling establishment and lease it to him with an option to purchase. Brunswick's interest was in getting customers to sell its equipment. In January, 1962, Jardine signed an order for $320,000 worth of bowling equipment, paying $1,000 down; the next payment was to be $32,000 before delivery.

In February, after the first builder-financier recommended by Brunswick declined to take the job, defendant Brunswick arranged for a meeting between Jardine and Jack Charlesworth. At that meeting Brunswick's representative, Harold Tracy, told Jardine that Charlesworth "could build these buildings and finance them and there was nothing to worry about * * * he [Charlesworth] was going to buy the land and build the building and lease it to me

[Jardine] with an option to buy it." The building site recommended by Brunswick was rejected by Jardine, who found another site of 18½ acres selling for $37,000, which the parties all approved. The down payment was to be $500.

Charlesworth was purportedly relying on money coming from a housing project he was building near Hill Field in Davis County. Early in April, 1962, when the money from this project was not forthcoming and Charlesworth was unable to make the $500 down payment on the land, Charlesworth met with Jardine and Brunswick to discuss this problem. It was dealt with thus: Jardine agreed to advance $9,000 and take the contract to purchase the 18½ acre site in his name. Because of this larger down payment, the seller would convey outright two acres to Jardine, which he would then convey to Charlesworth to build upon and mortgage if necessary; and Charlesworth was to reimburse Jardine. Brunswick's representative approved this arrangement and said that "If this would hurry the plan along he thought it would be a good thing."

The following month, about May 25th, Charlesworth informed Jardine that he still was unable to get capital to commence the construction. He had learned from Brunswick that Jardine had about $23,000 set aside which was to be used as a down payment on the bowling equipment. Charlesworth assured plaintiff that his funds were only temporarily tied up, and that if Jardine would advance him the $23,000 he would go forward with construction and be able to repay Jardine before he needed the money to pay Brunswick. Jardine expressed willingness to loan it if Charlesworth could get a written statement from Brunswick Branch Manager, Mr. Dobbs, approving his loan of the money. Mr. Dobbs wrote Jardine the following letter:

> At the request of Mr. Jack Charlesworth I am writing this note to inform you that it will be satisfactory with us for you to pay the majority of the balance due remaining of your down payment upon the arrival of the lanes. This amount will be a sight draft attached to a Shipper's Order Bill of Lading.

Charlesworth requested a stronger statement, but was refused. When Charlesworth brought this letter to Jardine, it did not give the latter the assurance he desired, so he telephoned Dobbs asking "If it was all right to give him [Charlesworth] this money." He states that Dobbs' answer was that "He *thought* it was all right but *to protect* myself." (emphasis added) Upon this state of facts Jardine advanced Charlesworth the additional $23,000 and took a promissory note for that plus the $9,000 already advanced, a total of $32,000, then owed him by Charlesworth, and as his only security took an assignment of an insurance policy on Charlesworth's life.

The details of the failure of Charlesworth to obtain adequate finances for the project, and later of Jardine to do so, can be spared except to say: they did fail; the property was sold at foreclosure sale, and by reason thereof Jardine lost substantially all of the money he had advanced, which he now blames upon and seeks to recover from Brunswick.

■ We have no disagreement with the proposition advocated by the plaintiff and adopted by the trial court that under some circumstances there may be a cause of action for deceit even though the misrepresentation was not wilfully false.[1] Where one having a pecuniary interest in a transaction, is in a superior position to know material facts, and carelessly or negligently makes a false representation concerning them, expecting the other party to rely and act thereon, and the other party reasonably does so and suffers loss in that transaction, the representor can be held responsible if the other elements of fraud are also present.[2]

■ Taking the evidence in the light most favorable to plaintiff's position, as we are obliged to do on this review,[3] there are certain aspects of the situation thus presented which indicate persuasively that it does not meet the requirements of the doctrine just set forth. Brunswick undertook to do as it had agreed: to find someone to finance and build for Jardine. But the question to which plaintiff provides no adequate answer here is: Wherein is it shown that they went beyond this and became obligated to underwrite the transaction? The statement of Brunswick's agent to Jardine that Charlesworth "could build these buildings and finance them; and there is nothing to worry about," could well be understood as reflecting an opinion only. Be that as it may, what is important is that he was then making a representation about Charlesworth's ability as a builder and financier, and although later events may raise some doubt as to its accuracy, there is actually

1. See Ellis v. Hale, 13 Utah 2d 279, 373 P.2d 382, wherein we so stated and pointed out that the action for negligent misrepresentation "differs from intentional misrepresentation in that in the former [negligent misrepresentation] the representor makes an affirmative assertion which is false without having used reasonable diligence or competence in ascertaining the verity of the assertion"; see also Restatement, Torts § 552 and comments thereunder (particularly Tent. Draft No. 12, 1966, Comments a, i & j).

2. This is a variant of one of the traditionally accepted elements of fraud as set forth in Pace v. Parrish, 122 Utah 141, 247 P.2d 273, Element No. (4), that the representor either (a) knew to be false, or (b) makes recklessly, knowing he had insufficient knowledge upon which to base such a representation; see also Stuck v. Delta Land & Water Co., 63 Utah 495, 227 P. 791.

3. See Pace v. Parrish, footnote 2 above.

no way of knowing whether it was true or false when it was made; nor whether Brunswick knew or had any better means of knowing whether it was false or not than did Jardine. The still more important fact is that in making the representation about Charlesworth's ability as a builder and financier, he was not making any representation about Charlesworth as a credit risk for a loan from Jardine. No such transaction was then in the contemplation of the parties.

When the question of Jardine's lending money to Charlesworth did come up, the letter which Brunswick wrote did nothing more than express a willingness that a payment of money to Brunswick could be deferred until the delivery of the bowling lanes. In our opinion there is no justification for a conclusion that this letter, coupled with the telephone conversation with Mr. Dobbs in which he declined to make any stronger commitment and expressly cautioned Jardine "to protect" himself, was a wrongful inducement of the latter to loan money to Charlesworth. This is particularly so when the facts are considered in connection with the defendant's own conduct relating to the requirement that there must be reasonable reliance upon a false representation as a predicate to recovery.

 In regard to this alleged cause of action for negligent misrepresentation, it is pertinent to keep in mind that there is recognized a defense somewhat analogous to contributory negligence in other tort actions. The one who complains of being injured by such a false representation cannot heedlessly accept as true whatever is told him, but has the duty of exercising such degree of care to protect his own interests as would be exercised by an ordinary, reasonable and prudent person under the circumstances; and if he fails to do so, is precluded from holding someone else to account for the consequences of his own neglect.[4] The evidence shows with ample clarity that Jardine was at least as remiss as was Brunswick in this regard. He was no neophyte, but was a man of considerable business experience.

The fact that Charlesworth could not raise the down payment on the property as he had promised should have served as a warning to Jardine of the questionable status of Charlesworth's finances before

4. Cf. the principle that the plaintiff's reliance must be reasonable under the circumstances, stated in cases cited in footnote 2 above, we do not here confront nor deal with whether and to what extent such a defense may be available against a wilful misrepresentation, see 5 Williston on Contracts, Revised Edition § 1512; Prosser, Torts §§ 102, 103 (3rd ed. 1964); Restatement, Torts §§ 537, 540, 541 (1938).

he had advanced any money to him. When asked if he hadn't thought it a little strange that a person who was going to buy land for $37,000 and construct a building worth $240,000 couldn't even raise the $9,000 down payment, he answered yes, but that he relied upon *Charlesworth's* statement that he was going to get the money from the Hill Field project. The warning was supplemented further before he advanced the major loan by the fact that even after the first advance, and the elapse of several weeks more time, Charlesworth still didn't have money and requested of Jardine all of the funds the latter had available.

In full awareness of the presumptions in favor of the validity of the judgment and of our obligation to review the evidence in the light most favorable to sustaining it if possible, we are unable to see any basis upon which it reasonably could be concluded that a cause of action for negligent misrepresentation has been proved by the required quantum of clear and convincing evidence,[5] or at all. Accordingly, the judgment is reversed, costs to defendant (appellant).

CALLISTER, TUCKETT, HENRIOD and ELLETT, JJ., concur.

5. Pace v. Parrish, footnote 2 above.