497 P.2d 31

Carolyn E. THOMAS, Plaintiff and Appellant,

v.

Michael CALDWELL, Stanley Caldwell, et al., Defendants and Respondents.

No. 12570.

Supreme Court of Utah.

May 15, 1972.

---

Jay A. Meservy, Salt Lake City, for plaintiff-appellant.

Sumner J. Hatch, Salt Lake City, for defendants-respondents.

TUCKETT, Justice:

The plaintiff commenced these proceedings in the court below seeking to recover possession of two large Japanese vases and for damages. From an adverse decision the plaintiff has appealed.

In April 1969, the plaintiff was the owner of two large Oriental vases, one a Japanese Cloisonne, the other a Japanese Satsuma. On or about April 22, 1969, the defendants, Michael Caldwell and Stanley Caldwell, who had been childhood friends of the plaintiff's children, were invited to the home of the plaintiff. During the visit the defendants stated that they had become interested in antiques and that Stanley had become an expert antique appraiser. Stanley put a value of $1,000 on the Cloisonne vase and a value of $400 on the Satsuma. The defendants made an offer to the plaintiff to purchase the vases for the sum of $1400. After considering the matter of the sale for a day or two, and after consulting members of her family, Mrs. Thomas agreed to sell the vases for the price offered. Some weeks later, Mrs. Thomas observed an advertisement in a local newspaper offering to sell the vases for a sum greatly in excess of the purchase price. Mrs. Thomas then filed these proceedings in replevin to recover possession of the vases and to rescind the sale.

It is the plaintiff's contention that a fiduciary relationship had been established by the fact that Stanley Caldwell, by holding himself out to be an expert appraiser, had induced the plaintiff to rely upon his expert knowledge as to the value of the vases in question.

The record reveals that Mrs. Thomas owned a large number of antiques and was generally familiar with their value. She had been offered the sum of $1,000 for the

Cloisonne vase by a Salt Lake antique dealer. During the trial the plaintiff produced as an expert witness on values one Madil Sarkisian who placed the value of the vases in question at a sum considerably in excess of the price paid by the defendant. However, it is noted that Sarkisian based his estimate of value on the prices of Chinese vases produced at a different period of time and which he stated to be of a lesser value than the Japanese vases we are concerned with. The vases used by Sarkisian in fixing his estimate of value were some he had located in Calcutta and in Hong Kong. During his testimony Sarkisian stated that the Cloisonne vase involved here had been damaged and that it would cost $2300 including transportation to have it restored. It would seem that the evidence of value as elicited from the plaintiff's expert fails to meet the test for determining the market value of the property involved here.[1]

The trial court was of the opinion that the plaintiff had failed to establish a fiduciary relationship between the parties and that the evidence fails to show misrepresentations on the part of the defendants. We are obliged to review the evidence in a light most favorable to the findings of the court below and to sustain its judgment if possible.[2] After a careful review of the record we must conclude that the plaintiff has failed to sustain her claim of fraud by clear and convincing evidence.

The judgment of the District Court is affirmed. No costs awarded.

CALLISTER, C. J., and HENRIOD and CROCKETT, JJ., concur.

ELLETT, Justice (dissenting).

I cannot agree with the prevailing opinion, which affirms the ruling of the trial court. The facts of this case are not in dispute, as the defendants offered no evidence in defense.

The plaintiff, an elderly widow, inherited two Oriental urns and knew nothing of their value. The defendants were former neighbors and went to school with plaintiff's children, and after years of separation returned and were visiting in her home. They represented to her that Stanley Caldwell was an expert appraiser of antiques, whereupon she asked if he would appraise some antiques for her. She told them that a dealer had offered her $1,000 for one of the vases.

Stanley made the appraisal and was paid for the service by the plaintiff's giving him a large gold frame and an oil painting. Stanley told her the larger urn was worth no more than $1,000 and the smaller one was worth $400 and he would recommend that she take the $1,000 for the larger urn.

1. 12 A.L.R.2d 903.

2. Jardine v. Brunswick Corporation, **18** Utah 2d 378, 423 P.2d 659.

He told her he would give her $1,400 for both urns. She accepted the offer, and the sale was made.

Shortly thereafter the defendants advertised the two urns in a local paper wherein they asked $15,000 for each vase. Upon seeing the advertisement, the plaintiff realized she may have been put upon in making the sale and retained counsel to undertake a rescission of the contract of sale. She secured the services of an expert witness who was an appraiser of Oriental fine arts and who traveled the world over seeking treasured items. He undertook to determine the value of the two urns and being advised in the matter after traveling to China and India testified in court that the large urn was worth not less than $15,000 and the smaller one not more than $2,000.

The prevailing opinion states that the testimony of the expert "fails to meet the test for determining the market value of the property involved here."

It is to be noted that the urns are unique and there are no known duplicates from which a standard of market value can be ascertained from other sales. The witness qualified as an expert and was permitted to give his opinion as to what the urns would sell for in America. Even if one could reject the opinion of the expert witness, still the value of the two urns can be ascertained from the price asked by the owners, to wit, $30,000. The law in that regard is stated in 31A C.J.S. Evidence Sec. 183(1), as follows: "The fact that the owner of chattels has placed a certain valuation on them is competent against him as an admission, . . ."

The evidence compels a finding that the urns are worth many times the amount which the defendants paid for them.

There was a unilateral mistake on the part of the plaintiff as to the real value of her heirlooms. While ordinarily courts do not relieve from such a mistake, when the mistake is induced by a defendant courts will grant relief by way of rescission of the contract.

In this matter the two defendants deceived the elderly widow by giving her an unfair appraisal and by then buying from her at the appraised price. She was justified in believing the defendants would tell her the truth, and they had a duty to do exactly that after she had engaged Stanley to give her an appraisal. Even if they had not been appraisers, they would have been under the duty to tell her the truth or to remain silent when she asked them for their opinion as to the value of the antiques.

A statement of the applicable law is set out in the text of an annotation found in 56 A.L.R. at page 434 as follows:

So, while recognizing that the prospective purchaser would not ordinarily owe

the vendor the positive duty to inform the latter as to facts or conditions affecting the value of the land, in the absence of exceptional circumstances, the courts have widely held that there are other circumstances not involving a fiduciary relationship under which the vendor may have the right to rely upon the prospective purchaser telling the entire truth with respect to facts and conditions bearing upon such value; as where the vendor, being unacquainted with the land, specifically inquires what it is worth, or as to some particular matter which bears upon its value, or where to the purchaser's knowledge the vendor is in such a position that he cannot well find out the facts for himself, and so trusts the other to deal fairly with him. Under such circumstances it becomes the purchaser's duty to speak the truth, if he undertakes to speak at all, and a concealment or suppression of the truth, where coupled with any actual misrepresentation or overreaching, however slight, may be sufficient to entitle the vendor to have the deed set aside, the circumstances amounting to fraud or deceit.

It seems to me that the trial court and the prevailing opinion are too technical in seeking a legal fiduciary relationship between the parties. I think such a relationship is established when an appraiser for a fee undertakes to advise his client of the value of chattels. He is the expert and is possessed of superior knowledge and must know that his opinion as given will be relied upon by the client. However, a fiduciary relationship can arise without being a strictly legal one. In the case of Newell v. Halloran, 68 Utah 407, 250 P. 986 (1926), this court quoted from and approved the following text material from 2 Pomeroy, Eq.Jur., Sec. 956:

> Courts of equity have carefully refrained from defining the particular instances of fiduciary relations in such a manner that other and perhaps new cases might be excluded. It is settled by an overwhelming weight of authority that the principle extends to every possible case in which a fiduciary relation exists as a fact in which there is confidence reposed on one side, and the resulting superiority and influence on the other. The relation and the duties involved in it need not be legal; it may be moral, social, domestic or merely personal.

The plaintiff has tendered to the defendants a return of the money paid by them for the urns, and I think the judgment of the trial court should be reversed and the case remanded with directions to grant the plaintiff's request for rescission.