Richard A. CHRISTENSON, Trustee for Cape Trust, Plaintiff and Respondent,

v.

COMMONWEALTH LAND TITLE INSURANCE COMPANY, Defendant and Appellant.

No. 18330.

Supreme Court of Utah.

May 24, 1983.

George A. Hunt, Randy K. Johnson, Salt Lake City, for defendant and appellant.

David B. Boyce, Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

Plaintiff brought this action to recover damages caused by defendant's negligent acknowledgment of a document that incorrectly indicated that certain properties held in escrow had unencumbered equity values available as security for the plaintiff. The trial court ruled that defendant's action constituted negligent misrepresentation and awarded appropriate damages. We affirm.

Plaintiff, Richard A. Christenson, is one of the trustees of Cape Trust, a pension and profit-sharing trust for the employees of Capitol Thrift & Loan. In 1977, AGLA, a land development company, began developing a residential subdivision known as "Falconhurst." AGLA obtained major financing through Western Mortgage Loan Corporation, which loaned AGLA $450,000. The loan was secured by a first deed of trust on all the Falconhurst lots.

To handle the collection and disbursement of lot proceeds, AGLA hired the defendant, Commonwealth Land Title Insurance Company, to act as its escrow agent. As set forth in their written escrow agreement, AGLA conveyed to Commonwealth,

as trustee, legal title to the lots. When a lot was sold, the proceeds were to be paid to Commonwealth. The buyer of a lot was to pay 60% down in cash and sign a note secured by a second deed of trust for the remaining 40%. Commonwealth would disburse the 60% cash down payment to Western Mortgage and the remaining 40%, when collected, to AGLA or to "any party to whom AGLA may assign its interest in this escrow agreement."

Because it had hired Commonwealth as its escrow agent, AGLA did not keep any records of how much had been paid off on the lots it sold, and relied instead on Commonwealth to do the bookkeeping. On occasion, AGLA would request a list of lots in which it still had a beneficial interest, i.e., those on which the second deed of trust had not yet been paid off.

Shortly after entering into the escrow agreement, AGLA sought additional financing for the Falconhurst development and obtained a supplemental loan from Capital Thrift. To secure the loan, AGLA assigned its beneficial interest in several Falconhurst lots to Capitol Thrift. Commonwealth duly forwarded 40% of the proceeds from these lots to Capitol Thrift as the notes secured by the second deeds of trust were paid off.

In 1977, AGLA also established a debtor-creditor relationship with Cape Trust by entering into a joint venture to develop a residential subdivision known as "Colony Estates." Cape Trust put up most of the money with the understanding that it would receive back what it disbursed plus some profit at the end.

When the Colony Estates project was completed, Cape Trust had not received enough money from the project to cover what it had disbursed. To make up the deficit and pay Cape Trust some profit, AGLA agreed to assign to Cape Trust its beneficial interest in several of the Falconhurst lots. Unlike the Capitol Thrift assignment, this assignment was not for security but for total satisfaction of the debt.

At the request of AGLA, Commonwealth sent AGLA a letter listing the lots which it represented had not been paid off. The list erroneously included five lots which had previously been paid off and the proceeds sent to Capitol Thrift. Thus, although the letter stated otherwise, AGLA had no beneficial interest left in those lots to assign.

AGLA forwarded the letter to Merlyn Hanks, a trustee of Cape Trust. Using this information, Hanks drew up an assignment which included the five lots. The assignment was signed by AGLA. On the back of the assignment was an "Acknowledgment" which was signed by Commonwealth and stated in relevant part:

> Commonwealth Land Title Insurance Company . . . agrees that it is in possession of the beneficial interest of promissory notes and second trust deeds covering the above mentioned properties . . . .

Before sending the proposed assignment to be signed by Commonwealth, Hanks telephoned Ralph Ribas, assistant vice-president of Commonwealth. At trial, Hanks testified that during the conversation,

> [I told Ribas] approximately what would be in it and the reason for it, and ask[ed] if he thought . . . if he would be able to give us the assurance we needed.
>
> . . . .
>
> I told [Ribas] . . . that he would [sic, i.e., should] not sign the agreement unless the lots described in the agreement were available.

In other words, Hanks told Commonwealth that Cape Trust needed the information on the assignment to be accurate, and that Cape Trust was relying on the assignment as written.

The assignment and acknowledgment were signed by AGLA and Commonwealth on October 4, 1978. Shortly thereafter, Cape Trust accepted the assignment from AGLA in satisfaction of the remaining Colony Estate joint venture debt. Later, when Cape Trust discovered the error in the assignment, it brought suit alleging unjust enrichment and negligent misrepresentation on the part of AGLA and negligent misrepresentation on the part of Commonwealth.

The trial court held that Cape Trust had failed to prove either unjust enrichment or negligent misrepresentation against AGLA. However, the court ruled in favor of Cape Trust on the negligent misrepresentation claim against Commonwealth. The issue on this appeal is whether the latter ruling was correct.

■ Negligent misrepresentation is a tort which grew out of common-law fraud. We defined it in *Jardine v. Brunswick Corp.,* 18 Utah 2d 378, 381, 423 P.2d 659, 662 (1967), as follows:

> Where (1) one having a pecuniary interest in a transaction, (2) is in a superior position to know material facts, and (3) carelessly or negligently makes a false representation concerning them, (4) expecting the other party to rely and act thereon, and (5) the other party reasonably does so and (6) suffers loss in that transaction, the representor can be held responsible if the other elements of fraud are also present. [Subdivisions added.]

*See also Dugan v. Jones,* Utah, 615 P.2d 1239 (1980); Restatement (Second) of Torts § 552 (1965). *See generally* 1 F. Harper and F. James, *The Law of Torts,* § 7.6 (1956); W. Prosser, *The Law of Torts,* § 107 at 704–710 (4th ed. 1971).

■ As the definition suggests, a casual statement or gratuitous advice from a stranger to a transaction cannot be the grounds for negligent misrepresentation. The recipient of such information could not reasonably rely on it because he could hardly expect the representor to exercise prudence and care in making the statement that would warrant reliance. If, however, the information is given in the capacity of one in the business of supplying such information, that care and diligence should be exercised which is compatible with the particular business or profession involved. Those who deal with such persons do so because of the advantages which they expect to derive from this special competence. The law, therefore, may well predicate on such a relationship, the duty of care to insure the accuracy and validity of the information.

1 F. Harper & F. James, *supra,* § 7.6 at 546 (footnotes omitted).

■ In cases where there is privity of contract between the parties, there is rarely doubt as to the existence of this duty. *Id.* Even without privity, however, one negligently making a false statement may be held liable. A recent case in point is *Dugan v. Jones,* Utah, 615 P.2d 1239 (1980). There the third-party plaintiffs were real estate purchasers who had been told by the third-party defendant, a real estate agent, that the property they were purchasing comprised 22¾ acres, when in fact it comprised only 6.9. We held that a claim for relief for negligent misrepresentation lies in tort against third parties to a real estate transaction. In support of this ruling, we quoted from *Jardine v. Brunswick, supra,* and Restatement (Second) Torts § 552.[1] *See also Arizona Title Insurance and Trust Co. v. O'Malley Lumber Co.,* 14 Ariz.App. 486, 484 P.2d 639 (1971); 1 F. Harper & F. James, *supra,* § 7.6 at 546–47; W. Prosser, *supra,* § 107 at 707.

■ The present case meets the requirements set by *Jardine.* (1) Commonwealth had a pecuniary interest in the AGLA-Cape Trust assignment. It was paid to be the escrow agent and disburse part of the proceeds of lot sales to AGLA or its assigns.

---

1. This section states in relevant part:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(2) As escrow agent, Commonwealth was in a superior position to know which lots had been paid off because of its duty to keep such records. Indeed, one of the reasons that both Cape Trust and Capitol Thrift were willing to rely on the assignments was that Commonwealth did the necessary bookkeeping, thereby relieving Cape Trust and Capitol Thrift from that responsibility. (3) Because Commonwealth was the escrow agent and had superior knowledge of the status of the Falconhurst project, Commonwealth was negligent in signing the acknowledgment without checking its records to see that all the lots to be assigned still had a beneficial interest left. (4) Commonwealth knew that Cape Trust would rely on the acknowledgment; both the acknowledgment itself and Hanks' advance phone call alerted Commonwealth to this fact. (5) Cape Trust's reliance on the acknowledgment was reasonable and (6) that reliance led to a loss.

■ Commonwealth contends that it owed no duty to Cape Trust to make accurate representations. We disagree. It is true that Commonwealth was not in privity with Cape Trust and had no duty to sign the acknowledgment or give Cape Trust any information concerning the lots. But when Commonwealth signed the acknowledgment, a duty arose to use reasonable care to not mislead one whom Commonwealth knew would justifiably rely upon the facts as represented.

*Arizona Title Insurance and Trust Co. v. O'Malley Lumber Co.,* 14 Ariz.App. 486, 484 P.2d 639 (1971), is squarely on point. The defendant, Arizona Title, was employed as an escrow agent by the entrepreneur of a large construction project. Arizona Title's duty was to disburse escrowed funds to contractors working on the project. Arizona Title's interest in the project arose from this employment, and also by virtue of a $37,000 loan it had made to the entrepreneur to help finance the project.

As the project progressed, several contractors contacted Arizona Title for assurance that there were sufficient escrow funds for them to be paid, and Arizona Title gave this assurance. When the money ran out before the contractors were all paid, suit was filed against the title company. The court ruled that Arizona Title was guilty of negligent misrepresentation:

[I]t is the law of the case that Arizona Title owed no contractual . . . duty to the contractors, and . . . *apart from any representations made by Arizona Title to the contractors concerning the availability of funds,* it did not owe the contractors the duty to make any calculations to ascertain whether sufficient funds would or would not be available to pay the contractors for their work. In other words, Arizona Title had no duty to speak or respond to the contractors' inquiries at all. But if it chose to speak, we think that under all of the circumstances its business relationship with the contractors carried with it a duty to exercise reasonable care in making representations about presently ascertainable facts.

*Id.* at 492, 484 P.2d at 645 (emphasis in original).

■ Commonwealth also contends that Cape Trust's reliance was not reasonable because it knew the lots had been paid off. It is true that Hanks served both as trustee for Cape Trust and as treasurer of Capitol Thrift, and thus in April 1978 had likely seen the check to Capitol paying off the five disputed lots. Listed on that check were the lot numbers of the five lots. Commonwealth contends, therefore, that Cape Trust, through Hanks, had knowledge that the lots were paid off when the assignment was drafted.

Concededly, Cape Trust had a duty to act reasonably to protect its own interests. *Jardine v. Brunswick, supra,* 18 Utah 2d at 382, 423 P.2d at 662. *Mikkelson v. Quail Valley Realty,* Utah, 641 P.2d 124 (1982); *Kohler v. Garden City,* Utah, 639 P.2d 162 (1981); *Cheever v. Schramm,* Utah, 577 P.2d 951 (1978); *Lewis v. White,* 2 Utah 2d 101, 269 P.2d 865 (1954); *Restatement (Second) of Torts* § 552A (1965).

Commonwealth relies particularly on *Mikkelson v. Quail Valley Realty,* Utah, 641 P.2d 124 (1982), in which we held that the

reliance of a home buyer on misrepresentations made as to the number of square feet in a home was unreasonable. In that case, the buyer had been told sometime before the deal closed that the square footage was 2800 sq. ft. when, in fact, the area was only 2394 sq. ft. We held that the buyer's reliance on this misrepresentation was unreasonable because after the misrepresentation, but before closing, he received a home appraisal and related forms which listed the actual square footage. In effect, the Court imposed on the buyer a duty of reasonable care to inspect important documents that were part of the transaction conveying the property.

The present case differs from *Mikkelson.* The April check to Capitol Thrift paying off the five lots was not a part of the AGLA-Cape Trust transaction. Indeed, the check had been given to Capitol some five or six months prior to Cape Trust's transaction. Under the circumstances, it was unreasonable to expect that Hanks would either remember the check or go back to old Capitol Thrift files and search for a check that might be related to the transaction. At trial, Hanks testified that he did not remember seeing the check, and the trial court found that at the time the assignment was executed, Cape Trust had no actual knowledge that the five lots had been previously paid off. Defendant's assertion that Cape Trust should have known is defeated by the finding that Cape Trust's reliance was reasonable.

▮ Commonwealth also asserts that Cape Trust had constructive notice that the trust deed notes had been paid off because deeds of reconveyance were on file with the Salt Lake County Recorder's office and therefore were a matter of public record, imparting "notice to all persons of the contents thereof" under U.C.A., 1953, § 57–3–2. Commonwealth, however, cites no legal authority for the proposition that Cape Trust had a duty to inspect those records or was bound by constructive notice.

▮ Generally a failure to examine public records does not defeat an action for a false representation because in most cases there is no duty to make such an examination. 37 Am.Jur.2d *Fraud and Deceit* § 263 (1968). Thus, it has been held in fraud cases that a plaintiff who contracts to buy property is under no duty to examine public records to ascertain the true state of title claimed by the seller. *E.g., Citizen's Savings and Loan Assoc. v. Fischer,* 67 Ill. App.2d 315, 214 N.E.2d 612 (1966); *Linch v. Carlson,* 156 Neb. 308, 56 N.W.2d 101 (1952); *Pattridge v. Youmans,* 107 Colo. 122, 109 P.2d 646 (1941). *See also* W. Prosser, *The Law of Torts,* § 108 at 718 (4th ed. 1971); 37 Am.Jur.2d *Fraud and Deceit* § 263 at 353 (1968); *Annot.,* 33 A.L.R. 853, 950 (1924). We think this rule applies with equal force in this case, even though Commonwealth was not a seller. As trustee, it had legal title and managed the beneficial title.

▮ In addition, Commonwealth argues that there is insufficient evidence to support the trial court's finding of fact that Cape Trust accepted the assignment in satisfaction of an obligation owed by AGLA. Commonwealth contends that the evidence did not establish that there was a debt from AGLA to Cape Trust, the amount of that debt, or that the assignment was accepted in satisfaction of the alleged debt.

On appeal, findings of fact will not be disturbed if they are supported by substantial evidence. *E.g., Litho Sales, Inc. v. Cutrubus,* Utah, 636 P.2d 487 (1981). Hanks testified that Cape Trust bargained for 40% of the value of all the lots to be assigned; thus, the amount of the debt was 40% of the value of the five disputed lots. Hanks also twice testified that the assignment was accepted in satisfaction of the debt. Although there was conflicting evidence, the finding was adequately supported.

▮ Commonwealth also contends that the evidence did not support the trial court's award of damages. This contention is also without merit. The trial court ruled that Cape Trust was entitled to $21,600 for the five lots. The record supports the damage award. The combined sale value of the five disputed lots was $54,200; forty per-

cent of that is $21,680. If anything, the damages are $80 short.

The trial court also awarded prejudgment interest at the rate of 10% per annum from October 7, 1977 to April 7, 1978, and thereafter at the rate of 18% until judgment was entered. Prejudgment interest may be awarded where, as here, the loss is fixed as of a particular time, and the amount of the loss can be calculated with mathematical accuracy. *Jorgensen v. John Clay and Co.*, Utah, 660 P.2d 229 (1983). The interest on trust deed notes was set at 10% for the six months from the time the lots were sold, and 18% thereafter. Apparently, the lots in question were sold October 7, 1977. We find no error in the award.

Commonwealth also makes additional minor arguments for which it cites no legal authority. The arguments are without merit.

Affirmed. Costs to respondent.

HALL, C.J., and OAKS, HOWE and DURHAM, JJ., concur.