373 P.2d 382

Keith B. ELLIS et al., Plaintiffs
and Appellants,

v.

Karl B. HALE et al., Defendants and
Respondents.

No. 9537.

Supreme Court of Utah.

July 12, 1962.

Adam M. Duncan, Ronald N. Boyce, Salt Lake City, for appellants.

Hanson, Baldwin & Allen, Backman, Backman & Clark, Salt Lake City, for respondents.

CALLISTER, Justice.

Action for damages arising out of certain real estate transactions. From an order of the lower court dismissing their

second amended complaint, with prejudice, plaintiffs appeal.

The complaint which we are asked to review is rather lengthy and complex, to say the least. As best we can determine, the facts alleged are as follows:

The defendants Hale, Elders and Fisher were the owners of a certain parcel of real property in Salt Lake County. In the forepart of 1959, these defendants caused the parcel to be surveyed and subdivided into four lots.[1] A subdivision plat was prepared, designated as "Mount Olympus Park No. 5." The plat was submitted to the Salt Lake County Planning and Zoning Commission who refused to approve and accept it because there had not been compliance with a county ordinance relating to subdividing which requires lots of a larger area, installation of curbs, gutters, sidewalks, etc.[2] There is a general allegation that all of the defendants were acting as partners or joint adventurers in these real estate transactions and all had knowledge of the rejection of the subdivision plan.

It is also alleged that "during the spring of 1959" the defendants Hale, Elders and Fisher conveyed to defendants Barrett three lots identified upon the subdivision plat as Lots 1, 2 and 3, and that "in July and August 1959" the Barretts conveyed, by warranty deeds, these three lots to the plaintiffs Duncan.

Following the foregoing, the complaint alleges that on July 7, 1959, the defendants Hale and Elders conveyed, by warranty deed, Lot 1 to the Duncans, and on the same date, the Hales and the defendants Fisher, by like conveyance, conveyed Lot 2 to the Duncans. By warranty deed, dated August 7, 1959, the Hales and Barretts conveyed Lot 3 to the Duncans.[3] These last three mentioned deeds described the property conveyed by lot number and by metes and bounds. The metes and bounds descriptions coincided with the lots as they appeared on the plat. No mention of "Mount Olympus Park No. 5" was contained in these deeds.

On January 27, 1960, the defendants Elders executed a warranty deed to the plaintiffs Ellis. While this deed did not contain a lot number, the metes and bounds description conformed to Lot 4 of the subdivision plot.

The Duncans "conveyed or agreed to convey" their interest in the lots to the plaintiffs Hepworth and Burton, but are unable to complete the conveyance because

1. It appears from the record and the complaint, however, that in October, 1958, the Hales had evidently divided the parcel, because they executed separate deeds, four in all, to Elders, Fishers, and two others to portions of the parcel.

2. Title 9, Revised Ordinances of Salt Lake County, 1953.

3. While impossible of precise ascertainment from the allegations of the complaint, it is a reasonable inference that these deeds were later in time than the deeds from the Barretts to the Duncans.

of defendants' noncompliance with the ordinance. It is then alleged that the impossibility of securing building permits from the county has caused plaintiffs damage.

The complaint sets forth eight claims, revolving about essentially five asserted causes of action. These causes are: (1) defendants were negligent in violating a statutory standard of care and in exhibiting or causing to be exhibited to plaintiffs the subdivision plat without informing them that it had not been approved; (2) defendants induced the purchase of the lots by fraudulently misrepresenting that the plat had been approved and recorded; (3) defendants Backman negligently failed to disclose the fact that the properties involved were not approved building lots; (4) the title insurance policy was breached; and (5) there was a breach of the warranty of title.

▆▆▆ (1) Plaintiffs argue that the defendants, in selling the lots, violated the provisions of the county ordinance[4] aforementioned and our state statutes.[5] It is true that in some instances negligence may be predicated upon the violation of an ordinance or statute.[6] However, the laws here involved have as their object the intelligent and orderly development of the community, and, to effectuate this purpose, criminal sanctions were imposed. They were not enacted to promote safety, and they do not attempt to lay down rules regulating the conduct of individuals inter se. Their purpose is to impose a duty running to the sovereign, and a violation thereof does not necessarily give rise to civil liability.

▆▆▆ With respect to the claim that the defendants exhibited or caused to be exhibited the plat without informing plaintiffs that it had not been approved, the plaintiffs maintain that this amounted to a negligent misrepresentation. This claim was properly dismissed. The gravamen of the claim is that defendants are liable for negligently using a mode of communication which they ought to have foreseen would be interpreted by the plaintiffs as an indication that the lots involved were a part of an approved subdivision.

▆▆▆ The usual action for fraud, whether negligent or intentional, requires that a representation be made with the intention that it be relied on.[7] Negligent

4. It is doubtful that this ordinance has any application since it defines "subdivision" as a division of a tract of land into five or more lots. (9–1–2, Rev.Ord.S.L.Co., 1953). The instant tract was divided into only four lots.

5. 17–27–21 and 57–5–5, U.C.A.1953. These statutes make it unlawful, and provide a misdemeanor penalty for anyone selling a subdivision lot unless the subdivision has been approved and recorded.

6. cf. Satterlee v. Orange Glenn School Dist., 29 Cal.2d 581, 177 P.2d 279.

7. Clar v. Bd. of Trade, 164 Cal.App.2d 636, 331 P.2d 89; Courteen Sud Co. v. Hong Kong & Shanghai Bkg. Corp., 245 N.Y. 377, 157 N.E. 272, 56 A.L.R. 1186.

misrepresentation differs from intentional misrepresentation in that in the former the representor makes an affirmative assertion which is false without having used reasonable diligence or competence in ascertaining the verity of the assertion.[8] Moreover, liability will only lie for a negligent misrepresentation when there is a special duty of care running from the representor to the representee.[9]

■ In plaintiffs' complaint it is specifically alleged that the defendants had knowledge of the falsity of the supposed representation that induced the belief that the lots were part of an approved subdivision. We conclude that this knowledge forecloses an action for negligent misrepresentation, unless it can be said that defendants might be liable for the manner of their communication, rather than in the ascertainment of the verity of the communication. Under the facts of this case, no such liability can be recognized. The parties were dealing at arm's length, there was no special duty between them arising out of a special expertise or competence on the part of one of the parties, and the plaintiffs could have very easily cleared up whatever ambiguity or equivocalness there was in the communications by the easy expedient of a simple question. The inherent ambiguity of most forms of communication compel us to the conclusion that usually, as a matter of law, there can be no liability for negligence in the manner of expression. Obviously, if a person intentionally uses equivocal or ambiguous language with the hope that one of several meanings will be understood by the representee, an entirely different situation would be presented. But, since these facts are not pleaded, we need not address ourselves to that problem.

■■ (2) Plaintiffs contend that their complaint states a cause of action based upon fraudulent misrepresentation in that the defendants exhibited or caused to be exhibited to plaintiffs the subdivision plat and represented to them that it had been approved although they knew otherwise. However, it is specifically alleged that the defendant Karl B. Hale made the misrepresentation to the defendant, Roy A. Barrett, and that the latter repeated the same to plaintiff, Adam A. Duncan. If a person fraudulently makes a misrepresentation of facts to another with the intent that it will be transmitted to a third person, the latter may have a cause of action against the misrepresentor.[10] The instant complaint fails to allege that Hale intended the misrepresentation to be transmitted to Duncan or anyone else and must, therefore, fail.

8. 1 Harper & James, the Law of Torts, Sec. 7.6.

9. Ibid.
10. Rest. of Torts, Section 533.

■ The claim of fraud by plaintiffs Ellis must also fail. They received their deed directly from the Elders. A search of the complaint fails to reveal any allegation of a misrepresentation made to them.

■ (3) Plaintiffs Burton contend that the Backmans, in issuing to them an "interim insurance binder" and title insurance policy, were negligent in failing to disclose in these instruments the fact, of which the Backmans had knowledge, that the lots were located in a disapproved subdivision. The complaint contains no allegation that the Backmans knew that the Burtons were acting under an impression that the lots were within an approved subdivision and the Backmans had no duty to reveal facts outside the scope of the transaction. The lower court properly dismissed this claim.

■ (4) The Burtons also claim that there was a breach of the provisions of the title insurance policy issued by the Backmans. The policy is not contained in the record before us, and the particular provision or provisions claimed to have been breached are not set out in the complaint. This claim does not meet the requirements of our rules[11] and was properly dismissed.

■ (5) Finally, the Duncans contend that there was a breach of warranty of title in the deeds received by them to Lots 1, 2 and 3. It is alleged that the parties to these deeds understood the word "lot" to mean building lots in an approved subdivision. The lots were conveyed by use of the short form warranty deed. In their brief the Duncans argue that the warranties of good right to convey and seisin were breached. Whatever force this argument may have, by virtue of the fact that Section 17–27–21, U.C.A.1953 prohibits the sale of lots in an unapproved subdivision, it is not properly before the court since the complaint contains no allegation to that effect. In fact, the complaint does not rely on any of the five warranties embraced in the statutory warranty deed.

■ Duncans' theory apparently is that by using the word "lot" the defendants warranted that the properties were part of an approved subdivision. This is not sustainable. Warranties, other than the five embraced in a statutory warranty deed, should be stated in a deed with clarity. Description of land by the use of the word "lot" does not indicate a promise on the part of the defendant vendors in this case. Although such a description might possibly be probative of fraud, it cannot as a matter of law be considered a warranty. These claims were properly dismissed.

No discussion is contained in this opinion with regard to the possible claims against the defendants Barrett. It ap-

11. U.R.C.P. 8(a).

pears from the record that no appearance was made by them in the court below or in this court.

The order of dismissal with prejudice is affirmed. Costs awarded to defendants.

WADE, C. J., and HENRIOD, McDON-OUGH, and CROCKETT, JJ., concur.