2001 UT 10

Jane HARPER, Richard D. Harper, Frank Cattelan, and Richard Richins, Plaintiffs, Respondents, and Cross–Petitioners,

v.

SUMMIT COUNTY, a body politic, Summit County Commission, Summit County Planning Commission, and Utelite Corporation, Defendants, Petitioners, and Cross–Respondents.

Nos. 981493, 981495, 981591.

Supreme Court of Utah.

Feb. 6, 2001.

Rehearing Denied June 20, 2001.

James L. Warlaumont, Jeffrey W. Appel, Benjamin T. Wilson, Salt Lake City, for plaintiffs.

Jody K. Burnett, Salt Lake City, for Summit County, defendants.

Eric C. Olson, Salt Lake City, for Utelite Corp.

HOWE, Chief Justice:

## INTRODUCTION

¶ 1 Summit County, Summit County Commission, Summit County Planning Commission (collectively the County), and Utelite Corporation jointly petitioned for a writ of certiorari to the court of appeals, seeking review of its decision that the district court properly granted Jane Harper, Richard D. Harper, Frank Cattelan, and Richard Richins (collectively Harpers) partial summary judgment on their claim for declaratory and injunctive relief. Harpers cross-petitioned for review, asserting that the court of appeals correctly upheld the judgment on their claims for declaratory and injunctive relief, but erred in dismissing their claims (1) under the Utah Open and Public Meetings Act, (2) for denial of due process, and (3) for attorney fees. *See Harper v. Summit County,* 963 P.2d 768 (Utah Ct.App.1998).

## BACKGROUND

¶ 2 The history of this case is long and somewhat convoluted.[1] It began in 1988 when Utelite decided to relocate a railroad loading facility from Wanship, Utah, to property it leased from Union Pacific Railroad in Echo, Utah. The County gave verbal approval of the relocation at a planning commission meeting held December 13, 1988, stating that it considered the facility a permitted use. The County shortly thereafter confirmed its approval in a letter to Utelite.

¶ 3 Harpers, who live near the relocated facility in Echo, filed this action against the County in third district court alleging that the County violated its development code in approving the relocation; that it violated the Utah Open and Public Meetings Act by failing to notify the public that the issue would be discussed at a meeting of the planning

---

1. We note, as did the court of appeals, that five trial judges heard this case because of the third district's system of rotating judges in Summit County. *See Harper,* 963 P.2d at 771–72 n. 1 (citing *Gillmor v. Wright,* 850 P.2d 431, 438–40 (Utah 1993)) (Orme, J., concurring) (discussing rotating judges in Summit County).

commission and by failing to include the discussion of the issue in the minutes of the meeting; and that the County had violated their due process rights by approving a facility that caused them to lose the enjoyment of their property. Harpers sought removal of the facility pursuant to section 1.16 of the Summit County Development Code and section 17–27–23 of the Utah Code [2] and claimed attorney fees pursuant to section 54–2–9 of the Utah Code. They later amended the complaint, adding Utelite as a defendant without adding any claims specific to it.

¶ 4 Harpers moved for partial summary judgment against the County on the above claims.[3] Judge Homer Wilkinson granted the motion on their development code, open meetings act, and due process claims, and ordered the County to remove the facility "with the stay of the effectiveness of [the injunctive relief] for sixty (60) days from the date of this order." [4]

¶ 5 Following the bench ruling, Harpers again amended their complaint, adding claims specifically against Utelite, including common law and statutory nuisance and an attorney fees claim under 42 U.S.C. §§ 1983, 1988.[5] Judge Glenn Iwasaki later stayed removal of the facility pending final resolution of all claims still at issue.

¶ 6 Before trial on the claims still pending, Judge Frank G. Noel awarded attorney fees to Harpers under section 52–42–9, but held that they had failed to adequately plead a cause of action under section 1983 and were therefore not entitled to attorney fees under section 1988. He also found the facility to be a nuisance per se. Because of the nuisance ruling, Harpers stipulated to the dismissal of all remaining theories of liability, and the trial went forward only on the issue of damages on the nuisance claim, which were awarded in an amount totaling $14,500.

¶ 7 Judge Noel did not award equitable relief in addition to that awarded by Judge Wilkinson in the summary judgment because he found that the facility presently "(a) is not injurious to the plaintiffs, (b) does not adversely affect the plaintiff[s'] use and enjoyment of their property, and (c) does not cause any property damage to the plaintiffs." In fact, he found the facility to be a nuisance per se "solely by reason of Judge Wilkinson's ... Order and *the findings implicit in [it]*." (Emphasis added.)

¶ 8 The parties filed cross-appeals with the court of appeals, which affirmed the district court's decision regarding the development code violation and injunctive relief, but held that the open meetings act claim was barred by the statute of limitations and thus reversed the award of attorney fees based on it. *See Harper*, 963 P.2d at 781. The court of appeals also reversed Judge Wilkinson's conclusion that the County had violated the Harpers' due process rights and Judge Noel's finding that the facility was a nuisance per se. *See id.*

¶ 9 On this certiorari review, the County and Utelite jointly seek reversal of the court of appeals's decision affirming summary judgment on the development code violation claim and granting injunctive relief, while the Harpers seek reversal on the nuisance per se, due process, and open meetings act claims.

## STANDARD OF REVIEW

■ ¶ 10 Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c); *Copper State Leasing Co. v. Blacker Appliance & Furniture Co.*, 770 P.2d 88, 89 (Utah 1988). On certiorari, we do not review the decision of the trial court but of the court of appeals, and we do so for correction of error. *See State of Utah in the interest of M.W. and S.W.*, 2000 UT 79, ¶ 8, 12 P.3d 80.

---

2. Section 17–27–23 has since been renumbered 17–27–1002.

3. Though Harpers' summary judgment motion specifically excluded Utelite, Utelite filed a memorandum in response to it.

4. Though Judge Wilkinson ruled from the bench on this motion in July 1991, the findings and order were not signed until August 1993.

5. A third motion to amend was denied by Judge Pat Brian on March 13, 1995.

## ANALYSIS

### I. DEVELOPMENT CODE VIOLATIONS

¶ 11 We address first whether the court of appeals erred in affirming the trial court's determination on summary judgment that the County violated the Summit County Development Code. In their memorandum in support of summary judgment, Harpers asserted that the County violated the development code in four ways: (1) failing to issue a certificate of zoning compliance, (2) failing to issue a building permit before Utelite began construction, (3) concluding that the facility was a permitted use,[6] and (4) failing to order Utelite to cease work on and operations of the facility after becoming aware it was being constructed without a permit.

¶ 12 Though the trial court concluded the County had violated the development code, it did not specify how and did not otherwise explain its ruling. The court of appeals noted this failure, but found sufficient grounds available to the trial court upon which to affirm the decision. *See Harper*, 963 P.2d at 773. We now review the court of appeals's conclusion.

### A. Certificate of Zoning and Building Permit

¶ 13 The first two alleged violations are based on section 1.9 of the development code, which provides that "[c]onstruction or removal of any building or structure or any part thereof . . . shall not be commenced, or proceeded with, except after the issuance of a written permit for the same. . . . Prerequisite to the issuance of a building permit shall be the obtaining of a certificate of zoning compliance." Summit County Dev.Code § 1.9 (1989). As previously stated, Harpers asserted the County was at fault in not issuing

a certificate of zoning compliance and a building permit to Utelite before Utelite began construction of the facility. The court of appeals observed that the County did not deny the absence of a certificate of zoning compliance or a building permit. *See Harper*, 963 P.2d at 773. We presume, based on that observation, that the court of appeals concluded the certificate and permit did not exist and that the County had thus violated the code.

¶ 14 We disagree and hold that the County did not violate the development code for failing to issue a certificate of zoning compliance and building permit: the County did issue a certificate of zoning compliance, and the County had no duty to issue a building permit before construction began.

¶ 15 First, the County issued Utelite a certificate of zoning compliance in the form of a letter from the chairman of the planning commission to Carsten Mortensen of Utelite dated January 13, 1989. The letter, written on County letterhead, stated that "the Utelite operation . . . would be considered a permitted use at the Echo site." Section 1.6(11) of the development code defines a certificate of zoning compliance as "[a] certificate issued by the Zoning Administrator of Summit County, or his designated representative, stating that the proposed use of the building or land conforms to the requirements of this Code."[7] As is clear from this definition, the purpose of the certificate is to give the County the opportunity to ensure that a proposed project complies with zoning designations in the code. The letter stating that the facility would be a "permitted use" is evidence that the County had reviewed the project and had determined that it complied.[8] Thus summary judgment was not appropriate under this theory.

---

6. Harpers argue that such a conclusion was a "de[ ]facto rezoning" of the property in violation of chapter two of the development code and sections 17–27–7, –7.10, and –8 of the Utah Code. The County and Utelite assert that the planning commission's decision was a use decision, not a zoning decision.

7. Our search of the development code revealed no further requirements of a certificate of zoning compliance.

8. Section 12.20 of the development code defines two types of authorized uses of land or buildings in a zone: permitted uses and conditional uses. By designating the Utelite facility a "permitted use," the County essentially concluded it was an authorized use in the zone. To avoid any confusion of the terms, we will refer to a permitted use as an authorized use.

■ ¶ 16 Second, the County did not violate the development code by not issuing a valid building permit before Utelite began construction on the facility because it had no duty to issue a permit; there is no evidence in the record that an application for a permit had been submitted to the County.[9] Harpers have not shown, and we have been unable to find, any authority placing a duty on the County to issue a building permit when it has not received an application for one. The language of section 1.9 instead places the burden of applying for a building permit on the person or entity seeking approval to construct the building or structure. The County cannot be deemed to know that a building or structure will be built until an application is submitted or perhaps until construction begins. Therefore, reading into section 1.9 a duty on the County to issue building permits before an application is submitted is unreasonable.[10] Summary judgment on the development code claim was not appropriate under this theory.

### B. Authorized Use Violation

¶ 17 Harpers also argued in their motion for partial summary judgment that the County violated the development code in approving construction of the facility as a "permitted use" on the Union Pacific property because the property is zoned either "RR–2" or "AG–1," neither of which allows for construction of a loading facility. They contended that authorizing the structure in the zone constitutes at the very least a misinterpretation of the development code and at worst a "de[ ]facto rezoning" of the property. The County replied that its decision was neither of those things, but was instead a proper interpretation of the development code because the loading facility is an accessory use to Union Pacific's nonconforming use and is thus an authorized use customarily incidental to a permitted or traditional use under section 12.20(1) of the development code.

¶ 18 For a moving party to prevail on a motion for summary judgment, it must show, through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that no material facts are in dispute and that it is entitled to judgment as a matter of law. See Utah R. Civ. P. 56(c). The court of appeals held that Harpers met this burden by submitting "exhibits verifying undisputed facts regarding the electrical and building permits Summit County issued Utelite." Harper, 963 P.2d at 774 n. 2. It then determined that summary judgment was properly granted because the County's affidavits were not sufficient to establish a dispute of fact on whether the facility constituted an accessory use and thus a valid use in any zone under the development code. See Harper, 963 P.2d at 774.

■ ¶ 19 The County now urges us to reverse the court of appeals's determination that the affidavits were insufficient. However, we need not reach the sufficiency of the affidavits because we conclude that the court of appeals erred in finding that Harpers met their burden of establishing the absence of disputed facts on the accessory use issue and thus failed to show they were entitled to judgment.

¶ 20 In support of their motion for summary judgment, Harpers submitted the following: a copy of the application for building permit number 89007, which is designated an electrical permit; a letter dated January 13, 1989, on County letterhead from the chairman of the planning commission to a representative of Utelite confirming approval of the facility as a permitted use; minutes of the planning commission's December 13, 1988, meeting; a copy of the application for permit number 89291 with a copy of the approved building permit attached; an affidavit of Jane Harper; and a copy of the table of authorized uses from the development code. We find nothing in these submissions that addresses whether the facility is an ac-

---

9. Though the record indicates that Utelite sought approval of the facility at the December 1988 planning commission meeting, there is no evidence that it submitted an application for a building permit (other than the one for the electrical permit) until October 1989.

10. However, as we will discuss later in the opinion, the County was under a duty to ensure, once construction had already begun, that the structure complied with the zoning laws. See Summit County Dev.Code § 1.7(10).

cessory use on the property and thus conclude that they are not sufficient to resolve the disputes of material fact regarding the accessory use issue raised by the allegations and denials in the pleadings. Because the Harpers did not meet their initial burden, they were not entitled to summary judgment on their claim that the County improperly approved the facility as an authorized use.[11] Thus the County was not required to submit any evidence to defend against the motion.

### C. Development Code Section 1.7(1) Violation

¶ 21 In their complaint, Harpers also alleged that the County violated the development code in failing to order Utelite to cease use of the facility when the County realized it had been constructed without a valid building permit. Section 1.7(10) of the development code provides that the County shall "[o]rder work stopped on any building or structure which is being constructed, or removed contrary to the provisions of this Code. . . . Any person receiving such notice shall for[th]with stop such work until authorized by the Zoning Administrator or his authorized representative to proceed." The County did not order work stopped on the facility. In fact, after the building permit had been issued and the facility was complete, Harpers requested that the County order Utelite to cease and desist use of the facility and initiate a zoning or rezoning process of the area. The county attorney denied the request, stating that because the facility was an accessory use on the nonconforming railroad property, a cease and desist order would be "an unreasonable exercise of the county's police power and an unconstitutional taking of vested property rights."

¶ 22 We find that the County knew, at the very latest when construction began, that the facility was going forward without a building permit and was thus in violation of the development code. In failing to order Utelite to stop work on the facility, the County violated section 1.7(10) of the development code.

However, that violation was later remedied by permit number 89291, issued in November 1989.

¶ 23 The fact that section 1.7(10) of the development code provides that the County can authorize construction to continue after ordering it stopped implies that the violation can be remedied and that the building or structure can then be completed. In this case, the violation of the code requiring the County to halt construction of the facility as per section 1.7(10) is the lack of a building permit required by section 1.9. Thus if the violation of section 1.9 is remedied, the violation of section 1.7(10) is remedied as well.

■ ¶ 24 Although we have found no Utah case law construing a zoning ordinance such as section 1.9, we conclude that if a building or structure is found to be an authorized use in the zone, otherwise complies with the provisions of the code, and would have been a proper candidate for a building permit had one been sought before construction began, violation of section 1.9 can be remedied by the subsequent issuance of a valid building permit.

■ ¶ 25 If the facility was properly characterized a "permitted use" in the zone, building permit number 89291 remedied the violation of section 1.9 and thus the violation of section 1.7(10). Because the pleadings, on their face, raised a dispute about this issue, summary judgment on Harpers' development code claim was error. We thus direct the court of appeals to remand the case to the trial court for a determination of whether the facility is an accessory use to the existing nonconforming use and thus correctly designated a "permitted use" by the County.

### II. REMOVAL AND NUISANCE PER SE

¶ 26 The trial court granted Harpers injunctive relief on the basis of its conclusion that the facility was constructed in violation of the development code. Because we re-

---

11. The dissent asserts that the County erred in authorizing the facility because "[i]n order to qualify as a conditional use, the development code requires notice and hearing. In this case, no notice and no hearing were provided." We note that the facility was never asserted to be a conditional use, but was instead a permitted use. Thus we disagree that the development code required the County to provide notice and a hearing to make the use determination.

verse summary judgment on the development code claim, we must also reverse summary judgment on the injunctive relief and vacate the order of removal.

¶ 27 In addition, the trial court held the County's violation of the development code constituted a nuisance per se. The court of appeals reversed this holding, reasoning that although violation of a statute constitutes a nuisance per se, violation of an ordinance does not. Harpers urge us to reverse the court of appeals on the basis that a violation of the development code is a class C misdemeanor and thus violates Utah criminal statutes. We need not reach that question. The nuisance per se judgment was based on the development code violation, which we have reversed. Thus we reverse summary judgment on the nuisance per se claim and vacate the damages awarded by the jury.

## III. DUE PROCESS VIOLATION

¶ 28 Harpers alleged in their first amended complaint that "[b]y allowing the issuance of a[n illegal] building permit and the illegal de[ ]facto rezoning of the Utelite facility without notice to the public or a public hearing, Defendants have harmed Plaintiffs without providing them due process of law." In their summary judgment motion and affidavits, Harpers alleged that this harm included loss of enjoyment of their property and risks to their health and welfare because of the "invidious dust and other matter released into the air" during operation of the facility.

¶ 29 Judge Wilkinson granted the motion, stating in the order that "Defendants['] acts and omissions have harmed Plaintiffs without providing them due process of law." The court of appeals reversed, concluding that Harpers failed to allege sufficient facts to form the basis of a claim for the violation of their due process rights under the Fifth Amendment to the United States Constitu-

tion,[12] namely, that the County deprived them of their property and that the deprivation was made without due process. *See Harper,* 963 P.2d at 777. Judge Wilkinson did not address these two requirements, and the court of appeals concluded that "plaintiffs failed to articulate specific facts supporting their due process claim in their motion [because they] did not set forth specific undisputed facts that showed a life, liberty, or property interest of which the County had deprived them." *Id.*

¶ 30 To make a claim for deprivation of property without due process under the United States Constitution, a plaintiff must show both a property interest and a deprivation of that interest by the state without the required legal process. After reviewing Harpers' complaint and motion for summary judgment, we conclude that the court of appeals erred in finding that they did not allege sufficient facts to show a property interest. Included in the motion for summary judgment was an allegation and supporting affidavit that the dust and other materials emitted during operation of the facility curbed Harpers' use, enjoyment, and safety of their property. However, we disagree with Harpers' assertion that the County failed to follow the legal process in authorizing the facility, and thus their due process claim fails.

¶ 31 Harpers assert that the County failed to follow the legal process in authorizing construction of the facility by issuing an invalid building permit and by participating in a "de[ ]facto rezoning" of the property without notice and a hearing as prescribed by the development code. We disagree. First we find, as noted above, that the County's action in regard to the authorization of the facility was administrative in nature. In issuing a certificate of zoning compliance and building permit, the County was simply interpreting

**12.** The court of appeals analyzed Harpers' due process claim under federal and not state law because Harpers did not specifically state in their complaint or motion for summary judgment whether they relied on the federal or state constitution and cited only federal cases in their briefs to the court of appeals. *See Harper,* 963 P.2d at 777 n. 9. We agree with the court of appeals that Harpers' failure to set forth an argument and

analysis under both the state and federal constitutions obviates the need for us to analyze their claim under state law. *See State v. Lafferty,* 749 P.2d 1239, 1247 n. 5 (Utah 1988) ("As a general rule, we will not engage in state constitutional analysis unless an argument for different analyses under the state and federal constitutions is briefed.").

the development code and applying it to the property in question. In doing so, it followed the procedures set forth in the development code. The County's interpretation of the code may be found to be incorrect, but that is not the basis for a due process claim. It follows that the County's actions in regard to the facility did not amount to a "de[ ]facto rezoning" of the property, and thus there was no duty to follow the procedures (including notice and a hearing) set forth in the development code for amending the code, zoning map, and master plan. We affirm the reversal of summary judgment on the due process claim.

## IV. FEES UNDER SECTION 1988

¶ 32 Harpers seek review of the court of appeals's decision affirming the trial court's denial of attorney fees under 42 U.S.C. § 1988.

¶ 33 After Judge Wilkinson granted Harpers summary judgment on their due process claim, Harpers amended their complaint to include a claim for attorney fees under § 1988. Judge Noel denied Harpers' claim because they "failed to adequately plead, prior to Judge Wilkinson's ruling, a cause of action under [section] 1983," and were thus not entitled to fees under section 1988. The court of appeals affirmed Judge Noel's denial on the basis that Harpers failed to "refer to section 1983 or any other civil rights statute." *Harper*, 963 P.2d at 780 (citing *Ambus v. Utah State Bd. of Educ.*, 858 P.2d 1372, 1376 (Utah 1993)).

 ¶ 34 The court of appeals correctly stated that a party must " 'successfully prosecute a federal civil rights action' " to qualify

for attorney fees under section 1988.[13] *Harper*, 963 P.2d at 780 (quoting *Ambus*, 858 P.2d at 1376). The federal civil rights claim Harpers asserted is a violation of section 1983, which violation arises out of the allegation of deprivation of property without due process of law. Because Harpers failed, as we concluded above, to successfully prosecute their due process claim, the court of appeals correctly held they were not entitled to attorney fees under section 1988.[14]

## V. OPEN MEETINGS VIOLATION

¶ 35 As mentioned previously, a Utelite representative attended the December 13, 1988, planning commission meeting from which came the decision that the Utelite facility would be an authorized use on Union Pacific property. Neither the representative's name nor the subject matter was on the agenda, and no mention of the matter was made in the minutes of the meeting. Based on these omissions, Harpers filed this claim to void the actions taken at the meeting for violation of Utah's Open and Public Meetings Act (the Act), Utah Code Ann. §§ 52–4–1 to 10 (1998). Harpers moved for summary judgment on this claim. The County contended it was barred by section 52–4–8, which provides that a suit to void an action taken during a meeting must be brought within ninety days after the action. Utelite moved to dismiss the claim pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure, asserting the same timeliness issue.[15]

¶ 36 The trial court, in denying the motion to dismiss and granting Harpers' summary judgment motion, found that the proposed

---

13. Section 1988 provides: "In any action or proceeding to enforce a provision of section ... 1983 [of this title] the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs...." 42 U.S.C. § 1988(b) (1994).

14. We note, however, that although the court of appeals's conclusion is correct, its analysis is flawed. A party must allege a constitutional violation but need not refer specifically to section 1983 to successfully plead a violation of it. Harpers 1983 claim fails here because their constitutional claim was insufficient.

15. Utelite filed a rule 12(b)(6) motion to dismiss for Harpers' failure to file within the limitations

period. Though the court of appeals reversed "defendants' " motion to dismiss, *see Harper*, 963 P.2d at 777, the record seems to indicate that only Utelite, not the County, filed such a motion. Instead, the County's timeliness argument was written in response to Harpers' summary judgment motion in a document entitled "Summit County Defendants' Memorandum in Support of Its Motion to Dismiss (Lack of Standing) and in Opposition to Plaintiffs' Motion for Summary Judgment." Though the court of appeals attributed the motion to both defendants, we will refer to the rule 12(b)(6) motion simply as the motion to dismiss.

relocation of the facility was not mentioned on either the agenda or the minutes of the December 13 meeting. The court held that the statute of limitations "ha[d] not been violated due to application of the equitable tolling doctrine," and held that "[t]he decision of [the] County concerning the approval of utilization of the site currently occupied by Utelite Corporation was made in violation of the provisions of the Open Meeting Act."

■ ¶ 37 The court of appeals reversed summary judgment, concluding that the trial court erred in its application of the equitable tolling doctrine. *See Harper*, 963 P.2d at 776–77. It also reversed the trial court's denial of the motion to dismiss. *See id.* Harpers seek review of these decisions. We hold that the court of appeals correctly reversed summary judgment-not because the trial court incorrectly applied the equitable tolling doctrine, but because, even were we to assume the claim was filed on time (which we do not), Harpers were not entitled to judgment on the claim as a matter of law.[16] We also hold this claim was properly dismissed and address the two motions in turn.

■ ¶ 38 As we concluded above, the issuance of certificates of zoning compliance and building permits is an administrative action to be performed by the zoning administrator (or his or her representative) and by the building inspector, respectively. *See* Summit County Development Code 1.6(11), 1.9 (July 1989). Because the planning commission is not required to participate in the application or issuance of these documents and because their issuance is merely an administrative action, the topic is not one required to be discussed in an open meeting and thus does not fall under the requirements of the Act. Again, if the County properly concluded that the facility was an authorized use in the zone, issuance of the building permit was legal and did not injure the Harpers. Discussion, or lack thereof, at the meeting does not affect the issue one way or

the other. *Cf. Hutchison v. Cartwright*, 692 P.2d 772, 774 (Utah 1984) ("[N]o action by the county commissioners was necessary for the suspension or dismissal [of appellant] to become effective. Therefore, any meetings held or actions taken by the commissioners were irrelevant to the legality of appellant's suspension and subsequent dismissal. His suspension and dismissal gave rise to no claims for violations of the open meetings law."). Thus Harpers were not entitled to summary judgment on their open meetings claim.

¶ 39 For the same reason, the court of appeals properly reversed the trial court's denial of the motion to dismiss. Because the actions at the meeting could not affect the legality of the issuance of the certificate of zoning compliance or building permit, Harpers could not prove a set of facts on which to prevail on a claim for violation of the Act. In reversing the denial of the dismissal, the court of appeals effectively dismissed the claim. We affirm that dismissal.[17]

## CONCLUSION

¶ 40 In sum, we reverse summary judgment on the development code claim and instruct the court of appeals to remand to the trial court with instructions to determine whether the facility is in fact an accessory use and thus authorized under the development code. We vacate the order of removal. We affirm the court of appeals's reversal of the nuisance per se finding and vacate the jury award based on it. We affirm the reversal of summary judgment on Harpers' due process claim and affirm the denial of fees under 42 U.S.C. § 1988. And finally, we affirm the court of appeals's reversal of summary judgment on the open meetings claim and vacate the award of attorney fees made for its violation, and affirm the court of appeals's reversal of the trial court's denial of the motion to dismiss, effectively dismissing

16. We note that "we may affirm a grant of summary judgment on any ground available to the trial court, even if it is one not relied on below." *Higgins v. Salt Lake County*, 855 P.2d 231, 235 (Utah 1993).

17. Utelite raised a separate issue on appeal concerning application of 49 U.S.C. § 10101 dealing with federal regulation of the railroad industry. However, it conceded at oral argument that this statute contains a savings clause barring its retroactive application to this case.

the cause of action for failure to state a claim upon which relief can be granted.

¶ 41 Associate Chief Justice RUSSON and Justice DURRANT concur in Chief Justice HOWE'S opinion.

¶ 42 Having disqualified themselves, Justice DURHAM and Justice WILKINS do not participate herein; District Judges DONALD J. EYRE, Jr., and MICHAEL G. ALLPHIN sat.

EYRE, District Judge, concurring and dissenting:

¶ 43 I do not agree with the majority's decision directing the court of appeals to remand this case to the trial court. There are sufficient undisputed facts before this court to affirm the court of appeals's decision that the loading facility is not authorized.

¶ 44 The addition of a $100,000 industrial rock aggregate loading facility is not authorized in a residential or agricultural area as either a permitted or a conditional use.[1] That much is crystal clear even from a cursory glance at the zoning chart within the Summit County Development Code. But the majority believes that the court of appeals "erred in finding that Harpers met their burden of establishing the absence of disputed facts on the accessory use issue," and therefore erred in affirming summary judgment. The majority comes to this result after studying the documents submitted in support of Harpers' motion for summary judgment, deciding that none of them "addresses whether the facility is an accessory use on the property" and concluding that "they are not sufficient to resolve the disputes of material fact regarding the accessory use issue raised by the allegations and denials in the pleadings."

¶ 45 However, an accessory use is a "subordinate use custormarily [sic] incidental to and located upon the same lot occupied by the main use and devoted exclusively to the main use of the premises." Development Code definition (63). Thus, an "accessory use" is one that attaches to the user's preexisting main use. It is undisputed that Utelite did not use this section of the railroad at all until the loading facility was constructed. The loading facility is therefore the primary and exclusive use, not an accessory use.

¶ 46 Further, it is undisputed that the railroad's use of the property is a nonconforming use of land. As such, the railroad may not be extended or expanded in any fashion. *See* Summit County Dev.Code at 3.7; *see also Utah County v. Baxter,* 635 P.2d 61 (Utah 1981). The construction of the loading facility is clearly an impermissible extension or expansion.

¶ 47 The conclusion that Utelite's use is unauthorized is defensible on undisputed facts. Therefore, the court of appeals did not err by shifting to defendants the burden of proving disputed facts. Defendants' attempt to show a dispute of fact is inadequate. They submitted two affidavits, each of which is wholly lacking in any details and specific facts indicating how the loading facility could be an accessory use.[2] They simply set forth legal opinions, a defect recognized and ruled on by the court of appeals. Only sworn statements containing specific facts are sufficient to create a material issue of fact under rule 56, Utah Rules of Civil Procedure. I would affirm the court of appeals' conclusion that Harpers have met their burden to show the absence of disputed facts as required under rule 56(c), and would also affirm its conclusion that defendants' affidavits were insufficient to create an issue of material fact.

¶ 48 Accordingly, I would affirm the injunctive relief awarded by the trial court, a remedy clearly anticipated by the develop-

---

1. In order to qualify as a conditional use, the development code requires notice and hearing. In this case, no notice and no hearing were provided.

2. The affidavit of Eric A. Averett states: "[A]s the Summit County Building Official and Building Inspector, it was, and is my opinion that the Utelite loading apparatus was an accessory building ." The affidavit says nothing more concerning why the loading facility should be considered an accessory building.

The affidavit of Franklin P. Anderson verifies that he was the author of a letter attached to the affidavit. In that letter, Mr. Anderson states that the facility is a "'use customarily incidental to'" the railroad and thus "an accessory use."

ment code[3] and under Utah Code Ann. § 17–27–23 (1987).[4]

¶ 49 The undisputed facts support the legal conclusion that the Utelite loading facility is not an accessory use. Therefore, by sending this matter back to the trial court, the majority needlessly prolongs what is already a ten-year wait for Harpers and other plaintiffs.

¶ 50 I concur with the majority's decision with respect to due process, open meetings, and attorney fees.

¶ 51 Judge ALLPHIN concurs in Judge Eyre's concurring and dissenting opinion.

**3.** The development code provides: "The County Attorney, or any owner of real estate adversely affected by a violation of this Code, may institute injuntion [sic], abatement, or any other appropriate legal action to prevent, enjoin, abate or remove any erection, construction, alteration, maintenance, or use in violation of this Code." Summit County Dev.Code at 1.16.

**4.** Section 17–27–23 states:

The board of county commissions, the county attorney, or any owner of real estate within the county in which a violation occurs, may, in addition to other remedies provided by law, institute injunction, mandamus, abatement, or any other appropriate action or proceeding to prevent, enjoin, abate, or remove any erection, construction, alteration, maintenance, or use in violation of this code.