2004 UT 55

**Steve and Catherine SMITH, Plaintiffs and Appellants,**

v.

**Mel FRANDSEN dba Mary Mel Construction Co., Defendant and Appellee.**

No. 20020248.

Supreme Court of Utah.

July 2, 2004.

Stephen Quesenberry, J. Bryan Quesenberry, Provo, for plaintiffs.

Michael W. Homer, Jesse C. Trentadue, Bret S. Hayman, Thomas B. Price, Salt Lake City, for defendant.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 Appellants, Steve and Catherine Smith (the Smiths), filed suit against appellee, Mel Frandsen dba Mary Mel Construction Company (Mary Mel), seeking compensatory and punitive damages for negligent misrepresentation, negligence, and fraudulent concealment after the footings, foundation, and structure of their home settled, allegedly due to improper soil compaction and a general lack of lateral support.

¶ 2 The trial court granted Mary Mel's motion for summary judgment, and the Smiths filed a timely notice of appeal. We affirm.

## FACTS

¶ 3 In the early 1990s, Mary Mel purchased land in Lehi City with the intention of developing the property for residential use. In the period up to 1995, Mary Mel obtained approval from local government agencies and constructed and installed the roads, curbs, gutters, sidewalk, and utilities in what is now the Summer Crest Subdivision. On October 10, 1995, Mary Mel conveyed the properties, divided and improved, to Patterson Construction (Patterson), a residential developer with whom Mary Mel had an ongoing business relationship. Patterson, in turn, conveyed a portion of the property, lot 223, on the same day to GT Investments (GT).

¶ 4 GT is a licensed general contractor. GT, acting through one of its employees,

Joseph Sharp (Sharp), constructed a home on lot 223. During construction, Sharp "personally inspected the ... lot and viewed the condition of the lot before purchase and before building commenced." As the Smiths assert in their complaint, despite the fact that "the soil [on lot 223] was so soft that anyone walking on it would leave an imprint," Sharp, allegedly as a result of his lack of experience in contracting, ignored this "red flag" and failed to order any soils testing or other measures that would have revealed that the soil on lot 223 was inadequately compacted. After completing construction, GT delivered a warranty deed to the Smiths on August 26, 1996.

¶ 5 Since occupying the home, the Smiths have experienced "significant settlement of the house, its footings, foundations and structure." In seeking recovery for damage caused by the subsidence, the Smiths argue that GT "knew, should have known, or negligently failed to determine that the House was built on inadequate soil material and/or inadequately compacted soil." They additionally claim that in subdividing and developing the property prior to its conveyance to Patterson, Mary Mel performed "certain excavation work ... including filling in a low area or ravine" running through lot 223. As a result, the Smiths allege, Mary Mel "knew that the lot [included] unconsolidated fill, and failed to take proper steps to compact [the] lot, and in fact concealed and/or failed to disclose these facts to appropriate government entities and prospective purchasers." It is upon these facts that the Smiths assert claims against GT, Sharp, Mary Mel, and Patterson.

## STANDARD OF REVIEW

■ ¶ 6 In reviewing a grant of summary judgment, we give no deference to the trial court with respect to its legal conclusions. *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 13, 70 P.3d 35. Rather, we make our own determination as to whether the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). Nevertheless, we may affirm the result reached

by the trial court " 'if it is sustainable on any legal ground or theory apparent on the record,' even though that ground or theory was not identified by the lower court as the basis of its ruling." *Boud v. SDNCO, Inc.*, 2002 UT 83, ¶ 10, 54 P.3d 1131, (quoting *Orton v. Carter*, 970 P.2d 1254, 1260 (Utah 1998)).

■ ¶ 7 Mary Mel, pursuant to Utah Rule Appellate Procedure 11(e)(2), urges this court to uphold summary judgment, asserting that since the appellants have failed to provide a copy of the summary judgment hearing transcript, "the district court's decisions are presumed to be valid." However, Mary Mel misconstrues the meaning of rule 11(e)(2).

¶ 8 The rule simply requires appellants to include "a transcript of all evidence" relevant to a challenged finding or conclusion. Utah R.App. P. 11(e)(2). In this case, neither party claims that the missing transcript contains evidence bearing on the determination of the case. *See Harper v. Summit County*, 963 P.2d 768, 775 n. 4 (Utah Ct.App.1998), *rev'd in part and vacated in part on other grounds by Harper v. Summit County*, 2001 UT 10, 26 P.3d 193. Thus, appellants had no obligation to include the transcript in the record on appeal.

## ANALYSIS

### I. THEORIES OF LIABILITY

■ ¶ 9 Appellants seek compensatory and punitive damages against Mary Mel under three different theories of liability: negligent misrepresentation, negligence, and fraudulent concealment. In order to prevail under any of these causes of action, a plaintiff must demonstrate the existence of a duty running between the parties. For example, with respect to negligent misrepresentation, we stated in *Jardine v. Brunswick Corporation*, 18 Utah 2d 378, 423 P.2d 659, 662 (1967), that "[w]here one ... carelessly or negligently makes a false representation ..., expecting the other party to rely and act thereon, and the other party reasonably does so and suffers loss in that transaction, the representor

can be held responsible if the other elements of fraud are also present."[1]

■ ¶ 10 Ordinarily, in order to prevail in an action for negligent misrepresentation, plaintiffs must identify a "representor [who] makes an affirmative assertion which is false." *Ellis v. Hale*, 13 Utah 2d 279, 373 P.2d 382, 385 (1962); *see also Baskin v. Mortgage & Trust, Inc.*, 837 S.W.2d 743, 748 (Tex.App.1992) (upholding summary judgment in favor of a third-party lender who made no representations to plaintiffs in connection with the purchase of their homes). Indeed, Mary Mel makes a point of claiming that it made no representations, false or true, to the Smiths. The Smiths, however, contend that by conveying the property (jointly with Patterson) without indicating that the lot was unsuitable for construction, Mary Mel effected a representation to GT, which in turn made the same representation to them.

■ ¶ 11 In the past, Utah cases have acknowledged that "negligent misrepresentation is a form of fraud." *Atkinson v. IHC Hosps., Inc.*, 798 P.2d 733, 737 (Utah 1990); *see also Christenson v. Commonwealth Land Title Co.*, 666 P.2d 302, 305 (Utah 1983) ("Negligent misrepresentation is a tort which grew out of common-law fraud."); *Robinson v. Tripco Inv., Inc.*, 2000 UT App 200, ¶ 31, 21 P.3d 219 (Billings, J., dissenting) (identifying negligent misrepresentation as a "species" of fraud). Thus, interpreting the elements of the tort in a manner consistent with principles of common-law fraud, we have found that in addition to affirmative misstatements, an omission may be actionable as a negligent misrepresentation where the defendant has a duty to disclose. *Sugarhouse Fin. Co. v. Anderson*, 610 P.2d 1369, 1373 (Utah 1980) ("Misrepresentation may be made either by affirmative statement or by material omission, where there exists a duty to speak."); *DeBry v. Valley Mortgage Co.*, 835 P.2d 1000, 1008 (Utah Ct.App.1992) (de-

nying liability for an "implied" misrepresentation where the defendant mortgage company owed no duty to disclose information to purchasers of real property). Thus, a duty to disclose is a necessary element of the tort of negligent misrepresentation.

■ ¶ 12 In addition, it is well-established in our law that "without a duty, there can be no negligence as a matter of law, and summary judgment is appropriate." *Tallman v. City of Hurricane*, 1999 UT 55, ¶ 5, 985 P.2d 892 (quoting *Rocky Mountain Thrift Stores Inc. v. Salt Lake City Corp.*, 887 P.2d 848, 852 (Utah 1994)). Finally, in order to establish fraudulent concealment, "a plaintiff must prove the following three elements: (1) the nondisclosed information is material, (2) the nondisclosed information is known to the party failing to disclose, and (3) there is a legal duty to communicate." *Hermansen v. Tasulis*, 2002 UT 52, ¶ 24, 48 P.3d 235; *see also Fennell v. Green*, 2003 UT App. 291, ¶ 10, 77 P.3d 339; *McDougal v. Weed*, 945 P.2d 175, 179 (Utah Ct.App.1997) ("Fraudulent concealment requires that one with a legal duty or obligation to communicate certain facts remain silent or otherwise act to conceal material facts known to him"). Therefore, a duty to disclose is material to each of the alleged causes of action.

¶ 13 The pivotal question in this case is thus whether Mary Mel owed a duty to disclose the nature and existence of any subsurface defects, not only to its immediate successors in title, Patterson and GT, but also to the subsequent and more remote purchasers, the Smiths.[2]

## II. DUTY OF RESIDENTIAL REAL ESTATE DEVELOPERS TO REMOTE PURCHASERS

### A. Defining the Limits of a Developer's Duty

■ ¶ 14 "The issue of whether a duty exists is entirely a question of law to be

---

1. We clarified this test in *Price–Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*, 713 P.2d 55, 59 n. 2 (Utah 1986), wherein we indicated that the suggestion in *Jardine* that "all of the elements of fraud must also be proven is dictum. Although the cause of action for negligent misrepresentation grew out of common law fraud, the elements of fraud need not be independently established."

2. Because we find the resolution of this issue dispositive of the case, we decline to address the merits of Mary Mel's alternative argument that the Smith's allegation of negligent misrepresentation is barred by the economic loss rule.

determined by the court." *Ferree v. State,* 784 P.2d 149, 151 (Utah 1989). Courts consider many factors, none of which is dispositive, in determining when a duty runs between parties. *DeBry v. Valley Mortgage Co.,* 835 P.2d, 1000, 1007 ("A duty to speak will be found from 'all the circumstances of the case and by comparing the facts not disclosed with the object and end in view by the contracting parties.' " (quoting *Elder v. Clawson,* 14 Utah 2d 379, 384 P.2d 802, 804 (1963) (citation omitted))).[3]

¶ 15 Particularly in the realm of tort law, "[t]he duty concept ... is a policy determination." *DeBry,* 835 P.2d at 1003–04 ("Duty is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.") (citations omitted). For example, policy was one factor motivating our decision in *Loveland v. Orem City Corp.,* 746 P.2d 763, 769 (Utah 1987), adopting the position of the Wyoming Supreme Court extending the duty of disclosure to developers engaged in subdividing and improving lots for residential purposes. In *Anderson v. Bauer,* upon which *Loveland* relies, the Wyoming Supreme Court observed that "[a]s we developed from a rural to an urban society, ... [b]uilders constructing great numbers of houses acquired considerable knowledge and expertise in the area and used engineering services and studies to determine soil conditions ... and other questions concerning suitability for

---

**3.** *See e.g., Price–Orem Inv. Co.,* 713 P.2d at 60 (foreseeability); *Christenson v. Commonwealth Land Title Ins. Co.,* 666 P.2d 302, 305 (Utah 1983) (privity of contract); *Ellis v. Hale,* 13 Utah 2d 279, 373 P.2d 382, 384–85 (1962) (statutory obligations); *House v. Armour of Am., Inc.,* 886 P.2d 542, 549–50 (Utah Ct.App.1994) (whether user possesses special knowledge, sophistication, or expertise).

**4.** *See also Moxley v. Laramie Builders, Inc.,* 600 P.2d 733, 735 (Wyo.1979) ("The average purchaser is without adequate knowledge or opportunity to make a meaningful inspection of the component parts of a residential structure.").

**5.** *See also Moxley v. Laramie Builders, Inc.,* 600 P.2d 733, 735 (Wyo.1979) ("The average purchaser is without adequate knowledge or opportunity to make a meaningful inspection of the component parts of a residential structure.").

construction." 681 P.2d 1316, 1322 (Wyo. 1984).[4]

¶ 16 Therefore, in order to protect unsophisticated purchasers, under *Loveland,* a developer, subdivider or person performing similar tasks has

> a duty to exercise reasonable care to insure that the subdivided lots are suitable for construction of some type of ordinary, average dwelling house, and he must disclose to his purchaser any condition which he knows or reasonably ought to know makes the subdivided lots unsuitable for such residential building. He has a further duty to disclose, upon inquiry, information he has developed in the course of the subdivision process which is relevant to the suitability of the land for its expected use.

*Loveland,* 746 P.2d at 769.[5]

¶ 17 Notwithstanding our holding in *Loveland,* the duties owed by contractors and developers are not without limitation. Even where a duty is found to exist, it does not continue indefinitely. Absent intentional fraud, "it continues only until the vendee, or his successor, have had adequate time and opportunity, through occupation of the land or otherwise, to discover the existence of the condition, and to take effective precautions against it by repair or other means." Restatement (Second) of Torts § 353 cmt. g (1965).[6] Thus, the duties running from vendor to vendee and subvendee persist only

---

**6.** *See also House v. Armour of Am., Inc.,* 886 P.2d 542, 550 (Utah Ct.App.1994) (recognizing the "sophisticated user doctrine" whereby the manufacturer of a product is relieved of a duty to warn of the inherent dangers associated with a product if the purchaser is a sophisticated user and is charged with knowledge of the product); *see generally* Uniform Land Sales Practices Act, Utah Code Ann. § 57–11–17 (2000) (relieving real estate vendors of liability where "it is proved that the purchaser knew of the [vendor's] untruth or omission."); Restatement (Second) of Torts § 388 (1965); *id.* § 353 (a vendor of real property is only liable for failing to disclose conditions on real property if the "the vendee does not know or have reason to know of the condition or the risk involved, and the vendor ... has reason to believe that the vendee will not discover the condition or realize the risk").

until a subsequent purchaser knows or should know of the defect in the property.

### B. Application to the Facts

¶ 18 In this case, there is no dispute that Mary Mel conveyed the property to Patterson and then to GT. GT is a licensed general contractor in the state of Utah, and like developers, the law imputes to builders and contractors a high degree of specialized knowledge and expertise with regard to residential construction. *McDonald v. Mianecki*, 79 N.J. 275, 398 A.2d 1283, 1292 (1979) ("Whether the builder be large or small, the purchaser relies upon his superior knowledge and skill, and he impliedly represents that he is qualified to erect a habitable dwelling. He is also in a better position to prevent the existence of major defects."); *Groff v. Pete Kingsley Bldg., Inc.*, 374 Pa.Super. 377, 543 A.2d 128, 133 (1988) ("The professional builder is expected to have the skill and expertise to know how to guard against potential structural problems. Moreover, the builder is in the best position to prevent structural defects."); *Moxley v. Laramie Builders, Inc.*, 600 P.2d 733, 735 (Wyo.1979) ("Consumer protection demands that those who buy homes are entitled to rely on the skill of the builder and that the house is constructed so as to be reasonably fit for its intended use.").

¶ 19 In particular, builder-contractors are expected to be familiar with conditions in the subsurface of the ground. *See Sabella v. Wisler*, 59 Cal.2d 21, 27 Cal.Rptr. 689, 377 P.2d 889, 891 (1963) (holding a residential contractor negligent where "a reasonably prudent person under like or similar circumstances and as a result of making said excavations for foundation footings would have discovered the insufficient compaction of the underlying earth material, and would have caused soil tests and investigations to be made before proceeding with the building"); *Conolley v. Bull*, 258 Cal.App.2d 183, 65 Cal.Rptr. 689, 697 (1968) (finding a contractor was negligent for "constructing [a] house upon unstable and filled ground, containing an underground spring, without taking protective steps for providing adequate drainage"); *ABC Builders, Inc. v. Phillips*, 632 P.2d 925, 938 (Wyo.1981) ("We hold this to be the duty of ABC as builders to appellees: To furnish a safe location for a residential structure, and it may be negligence to not do so"). *See generally* Annotation, *Duty of Contractor to Warn Owner of Defects in Subsurface Conditions*, 73 A.L.R.3d 1213 (1976) (collecting cases from various jurisdictions in which "it was held that a contractor who knows, or should know, of a defect in a particular subsoil does not perform his contractual obligations in a workmanlike manner if he fails to notify the owner of the existence of the condition").

¶ 20 The facts indicate that Sharp, the GT employee supervising the excavation and placement of the Smith's foundation, had "no prior construction experience." Nevertheless, GT is deemed to possess the knowledge of a reasonably prudent builder-contractor under similar circumstances, and, as a matter of law, a builder of ordinary prudence would have discovered the insufficient compaction on lot 223. *See Coburn v. Lenox Homes, Inc.*, 186 Conn. 370, 441 A.2d 620, 624 (1982); *Foust v. McKnight*, 675 So.2d 1147, 1149 (La.Ct.App.1996) ("[A] vendor-builder of a residence is considered to be a manufacturer, and as such he cannot avoid the conclusively presumptive knowledge of the defects in the thing he manufactures.") (citations omitted); *Schamens v. Crow*, 326 So.2d 621, 626 (La.Ct. App.1975) (same); *George B. Gilmore Co. v. Garrett*, 582 So.2d 387, 393 (Miss.1991); *March v. Thiery*, 729 S.W.2d 889, 894–95 (Tex.Ct.App.1987) (imputing knowledge of faulty construction to residential builder). In addition, the Smiths themselves allege in their complaint that GT "knew, should have known, or negligently failed to determine that [their] house was built on inadequate soil material and/or uncompacted fill."

¶ 21 The parties agree that Mary Mel conveyed the property to Patterson and GT, both parties who, as a matter of law, possessed superior knowledge and expertise regarding the subsurface conditions on lot 223. Where a developer conveys property to a residential contractor, the knowledge and expertise of the builder, and the independent duties owed thereby, interrupt certain obligations running from the initial developer to subsequent purchasers. In other words,

borrowing from the language of the Restatement, we find that by conveying to one having "adequate time and opportunity" to discover the subsurface defects in lot 223, Mary Mel incurred no liability to remote purchasers of the property as a matter of law. *See* Restatement (Second) of Torts § 353 cmt. g (1965). Mary Mel had no duty extending beyond its conveyance to Patterson and GT, to both of which the law imputes a high degree of knowledge and expertise.[7]

¶ 22 The present case is distinguishable from those relied upon by the Smiths. For example, in *Lawson v. Citizens & Southern National Bank of South Carolina*, 255 S.C. 517, 180 S.E.2d 206 (1971), the South Carolina Supreme Court found a developer had a duty to disclose to a subsequent purchaser that "in developing and subdividing its land into lots to be sold for residential use only, [it] filled an enormous gully with stumps and other rubble to a depth of twenty to twenty-five feet and concealed this fill by covering it with soil." *Id.* at 208. However, when that case was decided in 1971, builder-contractors were not universally held to the same high standards that they are today. As the cases cited above indicate, the adoption of builder-contractor liability is a fairly recent phenomenon.[8] *See Conklin v. Hurley*, 428 So.2d 654, 657 n. 2 (Fla.1983) (documenting a trend beginning in the late 1960s and extending through the early 1980s whereby builder-vendors were held liable to immediate purchasers under an implied warranty of habitability).

¶ 23 Appellants also point to *Anderson v. Bauer*, 681 P.2d 1316 (Wyo.1984). In that case, the court placed primary responsibility on builders and contractors to ensure the suitability of the land for construction of residences. There, the lots at issue were suitable for some form of dwelling house, although some of the lots were admittedly unfit for homes with basements. *Id.* at 1323. But, as the court observed, "whether the particular house to be built was a house with no basement, a half basement, a tri-level

house, or a full basement was a decision not involving the developer." *Id.* Therefore, the court relied on the knowledge and judgment of the builder in finding that the developer had satisfied his duty and was not liable to homeowners. Likewise, our decision today requires contractors to be accountable, either directly or through explicit warranties from their predecessors in title, for the suitability of the land upon which they build.

¶ 24 Those cases that do find developers liable to remote purchasers involve factual settings in which the developer was also the builder-contractor or otherwise include a chain of title with no intermediate sophisticated purchaser. *See Barnhouse v. City of Pinole*, 133 Cal.App.3d 171, 183 Cal.Rptr. 881 (1982); *Washington Rd. Developers, LLC v. Weeks*, 249 Ga.App. 582, 549 S.E.2d 416 (2001); *Moxley v. Laramie Builders, Inc.*, 600 P.2d 733 (Wyo.1979).

### C. Policy Implications

¶ 25 Our holding today furthers the purposes and policies underlying the recognized exceptions to the doctrine of caveat emptor, and is not inconsistent with our prior caselaw on duty issues generally, or Utah statutes. As a result of their superior knowledge, residential home-builders in other jurisdictions have consistently been held liable to subsequent as well as immediate purchasers. *Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041, 1044–45 (Colo.1983) (citing cases from eight different states in which subsequent purchasers were held able to state a claim for negligence against a builder); *see also* Timothy E. Travers, American Law of Products Liability § 38:19 (3d ed.1987); Michael A. DeSabatino, *Liability of Builder of Residence for Latent Defects Therein as Running to Subsequent Purchasers from Original Vendee*, 10 A.L.R.4th 385 (1981). Just as the lack of purchaser sophistication motivated the initial exceptions to the doctrine of caveat emptor, the expansion of builder-contractor liability to encompass even remote purchas-

---

7. In doing so we do not address the merits of any suit involving Patterson, GT and the Smiths or between Mary Mel and GT.

8. *Stepanov v. Gavrilovich*, 594 P.2d 30 (Alaska 1979), also relied on by the Smiths, is inapposite because it involves a suit brought by residential contractors, rather than homeowners, against a developer.

ers is similarly driven. Like initial consumers of residential construction, subsequent homeowners typically possess no greater sophistication that would enable them to discover latent defects in the property. *Tusch Enters. v. Coffin*, 113 Idaho 37, 740 P.2d 1022, 1034 (1987) (" 'The same policy considerations that lead to [our adoption of the implied warranty of habitability for sales of new homes] ... are equally applicable to subsequent homebuyers.' " (quoting *Richards v. Powercraft Homes, Inc.*, 139 Ariz. 242, 678 P.2d 427, 430 (1984))); *see also* Dwight F. Hopewell, *C. Oates v. Jag: Let the Buyer Beware—A Remedy for Subsequent Purchasers of Homes in North Carolina*, 64 N.C. L.Rev. 1485, 1493 (1986) ("[A] subsequent purchaser of real estate is in a very similar position to that of the initial purchaser. Both are innocent purchasers who lack the expertise and knowledge necessary to uncover every latent defect.... Thus, both classes of purchasers deserve equal protection").

¶ 26 By implication, where a subsequent purchaser is not similarly situated but rather possesses some unique insight or information with respect to the property, liability may not be extended to subsequent purchasers. *See Tusch Enters.*, 740 P.2d at 1038 (Shepard, J., dissenting) (arguing that liability should be denied where "[t]he plaintiffs ... are not unknowing buyers of a residence built by an unscrupulous builder/developer[.] Rather, plaintiffs are a sophisticated and knowledgeable group of investors in real estate"). As the cases cited above indicate, residential builders and contractors are not innocent transferees occupying the same position as the ultimate residential consumer. Extending the liability of developers beyond builder-contractors to encompass remote purchasers is inconsistent with the rationale upon which recovery by subsequent purchasers was initially based.

¶ 27 As a policy matter, we believe that our holding will encourage builders and contractors to exercise that level of care consistent with the expertise legally imputed to them.

In addition, our decision preserves the contractual expectations of developers and builder-contractors. If unstable soil conditions are known to both the developer and the builder-transferee, the price of the land may be discounted to reflect the added cost involved in correcting the defect. *See Transamerica Ins. Servs. v. Kopko*, 570 N.E.2d 1283, 1284 (Ind.1991) (dealing with a property transaction in which a buyer "was given a credit against the purchase price of [a] new lot to compensate [the buyer] for the expense they incurred in correcting the soil conditions on the previous lot"). By requiring plaintiffs generally to sue up the chain of title, the allocation of risk and expectations embodied in land sale contracts will be preserved.[9]

## CONCLUSION

¶ 28 We hold that Mary Mel's duty of care and disclosure extended only to its immediate transferees, Patterson and GT, who "knew or should have known" of defects in the property, and not to the appellants. The order granting summary judgment is affirmed.

¶ 29 Justice PARRISH and Justice NEHRING concur in Chief Justice DURHAM's opinion.

WILKINS, Associate Chief Justice, concurring in the result:

¶ 30 I concur with the conclusion reached by the majority opinion that Mary Mel owed no duty to the Smiths, and that as such a summary judgment in Mary Mel's favor was proper. Mary Mel conveyed the lot to Patterson Construction, who conveyed to GT Investments, who conveyed to the Smiths. No theory advanced by the Smiths supports extension of a duty to disclose that far. The remaining analysis regarding the duty of home builders to disclose subsurface conditions to buyers is dicta at best.

¶ 31 We need not, nor are we asked to consider the duty, if any, running from a home builder to a home buyer to disclose non-obvious defects in the land that may or

---

9. It is, of course, likely that increases in costs incurred by builders will be passed on to purchasers, but presumably those increases will be outweighed by losses avoided because of higher standards in the building process.

may not be known by the builder. To do so in this case simply extends our analysis not only beyond the facts and law considered by the trial court, but also beyond the facts and law necessary to resolve the case. There is no need for us to rely on the law of numerous other jurisdictions to fashion a new duty under Utah law to be imposed on home builders.

¶ 32 As a result, I would affirm the trial court on the sole basis that the law imposed no duty on Mary Mel to disclose anything regarding the condition of the property to the Smiths, and that as a direct result the causes of action advanced by the Smiths against Mary Mel fail as a matter of law.

¶ 33 Justice DURRANT concurs in Associate Chief Justice WILKINS' concurring opinion.